**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JENNIFER GAJEWSKI and LUISA AVILES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> ENHANCED RECOVERY COMPANY, LLC, <br><br> Defendant. | Case No.: 18-cv-180 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jennifer Gajewski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Luisa Aviles is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family, or household purposes.

6. Defendant Enhanced Recovery Company, LLC ("Enhanced") is a debt collection agency with its principal offices located at 8014 Bayberry Road, Jacksonville, Florida 32256.

7. Enhanced is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Enhanced is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Enhanced is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

*Gajewski letter*

9. On or about February 6, 2017, Enhanced mailed a debt collection letter to Plaintiff Gajewski regarding an alleged debt owed to "Comenity Capital Bank" ("Comenity"). A copy of this letter is attached to this Complaint as Exhibit A.

10. The alleged debt referenced in Exhibit A was a PayPal credit account, and the alleged debt was incurred for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Gajewski inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Enhanced to attempt to collect alleged debts.

13. Exhibit A was the first letter Enhanced sent to Gajewski regarding this alleged debt.

14. Enhanced's letter as a whole is confusing and misleading to the unsophisticated consumer.

15. Exhibit A states: **Balance:** $1,743.56

2

16. <u>Exhibit A</u> also states:

> At this time you have a total outstanding balance of $1,743.56. To get your account out of delinquency and put in good standing you must pay $252.00. Your payment must be received by 02/28/2017 to prevent this account from entering the next stage of delinquency.

17. <u>Exhibit A</u> is confusing to the unsophisticated consumer. It is unclear whether Enhanced is collecting the entire $1,743.56 balance or just the $252.00 that is represented as being the amount required to get the account out of delinquency.

18. The alleged debt or debts here is an unsecured credit account. Upon information and belief, Enhanced and Comenity would accept any payment of any amount at any time.

19. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, *i.e.* missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number Enhanced is truly collecting, it need only state that amount in the letter.

20. The different amounts on <u>Exhibit A</u> render <u>Exhibit A</u> confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount Enhanced was actually attempting to collect.

21. Furthermore, it is unclear whether the $252.00 actually represents the "past due" amount according to the terms of the underlying credit agreement, or a completely arbitrary amount.

22. Additionally, the consequences of a failure to pay this amount and the account "entering the next stage of delinquency" are completely unclear.

3

23. The unsophisticated consumer would be confused by the threat that non-payment by February 28, 2017 would result in the account "entering the next stage of delinquency." That language can have any number of meanings, including but not limited to closing the account, increasing collection efforts, or filing a lawsuit.

24. The ambiguity is coercive. It is intended to make the consumer forego her validation rights and pay immediately.

*Aviles letter*

25. On or about March 1, 2017, Enhanced mailed a debt collection letter to Plaintiff Aviles regarding an alleged debt, allegedly owed to "Sprint." A copy of this letter is attached to this complaint as Exhibit B.

26. Upon information and belief, the alleged debt that Enhanced was attempting to collect was a cell phone service account, used only for personal, family or household purposes.

27. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Aviles inserted by computer.

28. Upon information and belief, Exhibit B is a form debt collection letter used by Enhanced to attempt to collect alleged debts.

29. Upon information and belief, Exhibit B is the first written communication that Enhanced sent to Aviles regarding the alleged debt to which Exhibit B refers.

30. Exhibit B contains the following text:

4

> **Federal Validation Notice:**
> Pursuant to 15 U.S.C./1692g(a), take notice that:
>
> 1. The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.
>
> 2. The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.
>
> 3. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.
>
> 4. If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.
>
> 5. Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the letter on the reverse side of this notice.

31. The above language in Exhibit B is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

32. If Exhibit B was actually mailed on March 1, 2017, it would have been received on, or after, March 4, 2017.

33. If Exhibit B was received on March 4, 2017, the consumer would have until April 3 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

34. Exhibit B also contains the following settlement offer:

> Our records indicate that your balance with Sprint remains unpaid; therefore your account has been placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering discounted options.
>
> Option 1: Pay the settlement of $279.71, please remit by April 05, 2017.
> Option 2: Pay the settlement of $298.36, payable in 2 monthly payments of $149.18.
> Option 3: Pay the settlement of $317.01, payable in 3 monthly payments of $105.67.
>
> We are not obligated to renew this offer.
>
> This letter serves as notification that your delinquent account may be reported to the national credit bureaus.
>
> Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to re-establish service with Sprint at a future date, Sprint may require partial or full payment of your remaining balance at that time, according to Sprint's credit policy.

35. The offer in Exhibit B requests that the consumer "please remit by April 05, 2017."

36. The offer in Exhibit B states that "We are not obligated to renew this offer."

37. The settlement offer in Exhibit B is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

38. Alongside the statement that "We are not obligated to renew this offer," the unsophisticated consumer would understand the request to "please remit by April 05, 2017" to be an expiration date, after which the settlement is no longer available.

39. Any consumer, unsure whether a payment received after April 5, 2017 would actually settle the debt, would feel compelled to allow for an extra two or three days for mailing and ERC processing to ensure they were able to take advantage of the settlement offer in Exhibit B and that the payment would not be processed as a partial payment on the full balance.

40. Thus, any consumer who wished to take advantage of the settlement offer in Exhibit B would feel compelled to mail out payment on or before March 31, 2017.

41. The 30-day validation period identified in Exhibit B would end before the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in Exhibit B before it expires. *See* 15 U.S.C. § 1692g(a).

6

Case 2:18-cv-00180-WED   Filed 02/01/18   Page 6 of 15   Document 1

42. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for ERC to provide verification in time for the consumer to tender payment in acceptance of the settlement offer.

43. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in Exhibit B expired and that ERC was not obligated to renew the offer would be unsure how, or whether, she could seek verification of the debt but accept the settlement offer if the debt could be verified.

44. The statement that a debt collector is "not obligated to renew" an offer tracks safe-harbor language that was created by the Seventh Circuit, which is meant to signal to the unsophisticated consumer that the offer may not *actually* expire on the expiration date because renewal of the offer is, at the very least, a possibility. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007).

45. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that the language must be properly tailored to the circumstances. *See Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor for debt collectors who want to avoid liability for the kind of suit Bartlett has brought and now won. The qualification "for the kind of suit that Bartlett has brought and now won" is important. We are not certifying our letter

7

against challenges based on other provisions of the statute; those provisions are not before us.");
*see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

46. In the context of an initial settlement letter, the unsophisticated consumer, believing that the foregoing of validation rights is a material aspect of the settlement offer, would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away.

47. Because the settlement offer in Exhibit B, as a practical matter, expires before the validation period, there is an apparent contradiction between the settlement offer and the validation notice.

48. Exhibit B does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified.

49. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit B would require her to forego her rights to validate the debt.

50. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

51. The unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, might tender her payment to accept the settlement offer along with the notice of dispute.

52. The unsophisticated consumer would also not know whether or how she could receive her money back from Defendant if Defendant is unable to verify the debt or if the debt actually is not valid.

53. Moreover, when a consumer mails a dispute along with a payment that was intended to accept a settlement offer, it is unclear whether the FDCPA requires a debt collector to return the consumer's payment. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt."); *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

54. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the acceptance of a settlement offer is a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

55. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

9

56. Moreover, although the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

57. Thus, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from seeking verification.

58. Defendant did not include effective explanatory language in Exhibit B, *see, eg*. *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

59. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

60. Plaintiffs were confused by Exhibit A and Exhibit B.

61. The unsophisticated consumer would be confused by Exhibit A and Exhibit B.

62. Plaintiffs had to spend time and money investigating Exhibit A and Exhibit B and the consequences of any potential responses to Exhibit A and Exhibit B.

63. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A and Exhibit B.

64. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017

U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

11

65. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

66. 15 U.S.C. § 1692e generally prohibits debt collectors from making "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

67. 15 U.S.C. § 1692e(2) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

68. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

69. 15 U.S.C. 1692f generally prohibits the use of "any unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

70. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

71. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Count I is brought on behalf of Plaintiff Gajewski.

73. Enhanced represented the amount of the debt that Enhanced was attempting to collect in a confusing manner by stating multiple amounts that Enhanced was attempting to collect. Exhibit A.

74. The unsophisticated consumer would be confused as to whether Enhanced was attempting to collect only $252.00 or the $1,743.56 total balance.

75. Enhanced's conduct violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f) and 1692g(a)(1).

## COUNT II – FDCPA

76. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Count II is brought on behalf of Plaintiff Aviles.

78. The expiration date listed for the settlement offer in Exhibit B conflicts with and overshadows the debt validation notice, in that Exhibit B does not explain how the debt collector would proceed if the consumer attempted to request verification of the debt and accept the settlement offer if the debt could be verified. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

79. The expiration dates listed for the settlement offers in Exhibit B conflict with and overshadow the debt validation notice, in that the settlement offers require the consumer to tender payment during the validation period or shortly thereafter, but do not explain how the

13

validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

80. Exhibit B is confusing, deceptive, and misleading to the unsophisticated consumer.

81. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692g(b).

## CLASS ALLEGATIONS

82. Plaintiffs bring this action on behalf of two proposed classes.

83. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between January 30, 2017 and January 30, 2018, inclusive, (e) that was not returned by the postal service. Gajewski is the designated representative for Class I.

84. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between January 30, 2017 and January 30, 2018, inclusive, (e) that was not returned by the postal service. Aviles is the designated representative for Class II.

85. The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class.

86. There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Exhibits A and Exhibit B complied with 15 U.S.C. §§ 1692e, 1692f, and 1692g.

14

Case 2:18-cv-00180-WED     Filed 02/01/18     Page 14 of 15     Document 1

87. Plaintiffs' claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

88. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 1, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

15